Case number 25-1223, United States of America v. Moreno Lee Jackson II. Oral argument is not to exceed 15 minutes per side. Christopher Knight, for the appellant, you may proceed. Good morning, Your Honors. Chris Knight for Appellant Jackson, and I reserve three minutes for rebuttal. Great. May it please the Court. Subject to the Court's questions today, I'll focus on two key issues. First, the Court's decision in Montgomery makes clear that this is an invited-air case, not a waiver case. Jackson did not know of, much less abandon, a legal argument that some of his prior crimes were not qualifying convictions under the ACCA. By acknowledging that he committed the prior crimes as a matter of fact, Jackson did not knowingly and wrongly stipulate that those crimes were qualifying convictions as a matter of law. And second, Jackson's 2018 Michigan cocaine distribution conviction is not a serious drug offense. The cocaine element of Michigan law was broader than the federal definition of a serious drug offense at the time of the conviction. And the Court should decline the government's request to create a circuit split, and I think introduce substantial complexity into the categorical approach by accepting state law affirmative defenses. For these reasons and those in our briefing, including on the individual firearms, and I'll defer to our briefing on those unless the Court has questions, the Court should vacate Jackson's sentence and remand for resentencing under the correct guidelines range. Do you want to start with the waiver? Yes, I'll start with the waiver. Can Montgomery really overrule a prior precedent? I know you characterized it in your brief as reframing to be charitable, meaning to be charitable to Montgomery. But it seems to me that Aparco, Centino, and a whole host of cases, including Judge Sutton's recent case in the United States v. Sewell, have a very clear understanding of what waiver is, and that Montgomery, to be charitable, muddies the waters. I think Montgomery was attempting to take on the muddied waters and try to clarify and harmonize the Court's case law. I'm sorry, did muddied waters really exist before Montgomery? Because it seemed to me pretty clear, as we talk about in Acreage, that if you provoke an error, then you're inviting the error. But if you adopt the error, you are waiving. And here, at multiple phases of this, I know you call it an admission of fact, but that seems a little cute because he admitted the facts, obviously. He admitted he committed the sexual assault, but he also, in his plea agreement, in his arraignment, in his sentencing memo, in the sentencing hearing, agreed they qualified, and that's a criminal, that's a legal determination, they qualified to make him an armed career criminal. Yes, Your Honor, and I think that's the question, is what is the nature of waiver, what is the nature of invited error? And I think two definitional principles answer that question. The first is the intentional relinquishment piece of waiver. So that's what Montgomery was addressing. I like your Burris point. I obviously agree with it. But, Ken, is the logic of your position, and I'm finally going to let you answer. I know I keep interrupting. I'm sorry. But is the logic of your position that you can never waive an ACCA claim? I don't think that that's the necessary conclusion of the argument. I do think that there is a difference between legal and factual error, as the Court recognized. Parties typically cannot stipulate two legal conclusions. But Sewell, for example, is a case where the party knew of, he knew that he had a Second Amendment claim, a Second Amendment argument. The Court asked him and advised him of the concept. He was arguing he didn't. He was arguing Williams just came out, and he didn't know. Well, he was arguing that he did know that if he was going to raise a Second Amendment argument, he was going to have to file a motion to dismiss the indictment. And the Court advised him of that multiple times. So that's a case where there was knowledge of the claim that he was giving up, foregoing. And that is different from a case where everybody in the district court assumed, and I think wrongfully, assumed that there was no dispute about the status of the prior crimes. And so that puts this case much more in line with how Montgomery describes Aparco Centeno, where it says nothing in the record suggests that Aparco Centeno knew that the status of his prior crimes were in dispute. But Aparco Centeno, Judge Cole, found a waiver. Well, according to Montgomery, that would have been more properly classified as invited error. I understand that, but that's not what Aparco Centeno said, right? Aparco Centeno did use the term waiver correct, but it also said that the Court may review waiver when there's manifest injustice, which would be more of an invited error analysis, not a waiver analysis. My question at this point is, in Aparco Centeno, if the Court hadn't thrown in that line about how we don't foreclose appellate review for plain error, which was completely unnecessary to what the Court was doing there, if that hadn't been there, then how would you classify this? I think Aparco Centeno saying that it could review in its discretion if there was manifest injustice takes it out of the waiver category. If I ask you, suppose the Court hadn't thrown that in, because that was completely unnecessary to what the Court was doing, but for reasons that I don't entirely understand, it dropped that in as a sort of a, oh, by the way. But what if the Court had done everything in that case that it did do, except it hadn't made that observation? I think if the Court had just said, you waive a claim when you knowingly abandoned a known right, and here he knowingly abandoned the known right, but didn't say anything about the review, then that would be a different opinion, but I agree that would be a waiver. That would be more of a straight-up waiver analysis. But the knowing abandonment of... Can I ask you that then Smith, Hall, Ruiz, Smith and Hall unpublished, Ruiz published, all our ACCA cases, all rely on Aparco Centeno and its progeny, all say that's a waiver case, and all find waiver. Under similar circumstances to yours, what do we do with all of those? Two are unpublished, so your answer can be, those two are unpublished, judge, ignore them, I get that. Assume I'm not just going to abandon my colleague's thoughts there, and then Ruiz, which is published. All right, so I think Ruiz has language that he did knowingly relinquish the right, the argument, and that he was more culpable than the government, which would have been in an interest of justice analysis. Well, that's a different issue, but I guess he agreed there with the PSR that the felony counted, just like you did here, or your lower counsel did, and he stated at sentencing that the career enhancement applied. That's very similar to what happened here. In other words, Ruiz, in this case, are on similar parallels. I agree, Your Honor. I think that there is, as we say in our briefing, there is uncertainty and multiple strains in the court's case law. I think there is a way to harmonize them. I think Montgomery does a pretty good job doing that. I would say Ruiz, and the point I was making about the interest of justice, is that Ruiz invited the error, and it wasn't an error that the government also agreed with, that the district court also agreed with, so he was more culpable than the government, which would have been a factor in whether the court decided to review the error at all. Sometimes I think the court— Even if this is an invited error, why should we even review it? I know for waiver cases, we don't review the error at all. Why should we review an invited error? And I think most circuits don't. Most circuits treat invited error just like they treat waiver. Why should we do anything differently? Well, the court has—I think Montgomery, again, provides an answer. The court has explained the interest of justice typically favor reviewing an invited error when the government and the defendant are equally at fault, so when everybody kind of—Aparco Centeno, although there they didn't review it, but when everybody assumed that the status of the crimes was correct. But can I ask you there? So I get your point. It's a good one. But to Judge Mathis's question, when you look at invited error, right, first step's miscarriage of justice. Let's just assume we're going to agree that that threshold is cleared by a misapplication, a clear misapplication. When you get to part four of plain error, right, now when we go through the invited error gauntlet, I agree with Judge Mathis, we're unique, but then we ultimately get to plain error, and part four is, does it affect the integrity of the proceedings, things like that. And it seems to me there we can look through and say, well, we send it back. The judge could say under 3553 to avoid unwarranted sentencing disparities. We know this wasn't a sexual assault without touching because we know what he admitted to in the PSR. Those are unobjected to facts. We know he dealt cocaine, not whatever you call it, Ibuflame or whatever that is. So the reality is that the judge, this would be an appropriate sentence under the career offender because when you look at the facts, to avoid an unwarranted sentencing disparity, you should give them the same amount. So we should exercise our discretion just not to review it, which we can do under prong four of plain error. Your Honor, I'd point the court to Rosales-Morales, where I think the Supreme Court addressed a similar argument at least and said that guidelines calculations error does meet prong four of the plain error review. And in that case, the guideline actually didn't even, the sentence was within the new guidelines error. And the court said it still meant that there's no reason, there's no interest of justice in requiring a defendant to linger longer in prison than is proper under the guidelines. And the court has also treated, I think, the 3553 factors a little bit differently with relation to these kinds of errors versus a pure guidelines error. Now the government, there were four predicate offenses. The government is not, I guess, contesting the assault one. How would you characterize that? Would you say that the government has waived its argument that that's a predicate offense or forfeited? How would you characterize that? I wouldn't maybe go so far as a concession. An appellee waiver is kind of not the same as appellant waiver. But it certainly does not seem to dispute that the assault conviction is not a categorical match. And I think that's also just very clear from the lack of a force requirement in the Michigan statute. In an unpublished opinion in France, the court held exactly that with this exact statute. And I see I'm over time. I'm not getting a light. Oh, I do see it over there. Maybe that's why, right? It's only on the screen. Okay, that's my fault. Don't worry. You'll have your full rebuttal time. Thank you. Good morning, Your Honors. May it please the court, John Schottel on behalf of the United States government. This appeal can and should be resolved on two straightforward grounds. The first, which has been the subject of a lot of discussion today, is that Mr. Jackson knowingly waived any challenge he had to having qualified convictions under the ACCA, which subjected him to an enhanced mandatory minimum. The second is that Mr. Jackson directly admitted in a pre-sentence report interview that in order to support his addiction, he sold drugs and used a gun because he was paranoid. Mr. Jackson acknowledges in his briefing that if the court finds against him or rejects his ACCA challenge, that it doesn't need to reach any of the other issues in this case. And I think as been described here so far, this record ticks all the boxes for what this court has found traditionally in looking for waiver. We have a plea agreement, and a plea agreement itself is a negotiated, thought-out compromise in which certain parties get certain things, and they also give up certain things. In the plea agreement, there are parts where it's clear that he's saying he's waiving certain things, talking about the trial rights. But when we get to the ACCA predicates, it just says he acknowledges those. That's correct, Your Honor. He says he acknowledges that he's subject to a mandatory minimum sentence because he has at least three qualifying convictions. And I think what's particularly important and helpful on this issue is the attestation that he signed at the bottom, in which he said, I carefully went through this entire agreement with my attorney. I understand the terms of this agreement. I've talked to my attorney about the possible defenses, the consequences of signing this agreement, and the sentencing provisions. And I think that that attestation has to include the thing that's driving your entire sentence. We're going from something in which your mandatory minimum would be 15, or statutory maximum, I'm sorry, would be 15 years, to something where that's now the floor. And even if that weren't enough, we have Mr. Jackson, during a plea hearing, stating under oath that he agreed and understood he was subject to a 15-year mandatory minimum and that he had at least three prior qualifying convictions. And then, of course, we have further statements at sentencing from his counsel in which he acknowledged the same. I don't know what more evidence could be in the record that would show that Mr. Jackson waived or had a knowing abandonment, and this court hasn't, I think, imposed any sort of heightened standard where the defendant would have to use or provide some sort of exposition on the categorical approach in order to waive the issue. Certainly, this court has frequently. I think the other side's argument isn't that. It's that you have to intentionally waive what we've described as the abandonment and intentional relinquishment of a right, and how can you intentionally relinquish it if you can't understand it? That's their argument. I don't think you have to be correct in order to waive something. You also don't need to, I think, know the ins and outs. I haven't seen any suggestion in the case law of that. Frequently, especially in this case with the attestation, we have Mr. Jackson saying that he talked to his attorney about his defenses, and certainly there are complicated issues of law that get waived all of the time, and that's why Mr. Jackson has an attorney who presumably kind of understood these issues, and he said that he talked about his possible defenses with his attorney. He understood the consequences, and he understood the sentencing provisions generally. The other point that I would make is, I mean, I think he called it laughable that anyone could effectively understand a categorical approach enough, but I think what that would leave is no room left for this court to ever find waiver whenever you have a categorical approach case. No, I guess, at least in my mind, it will be a clear waiver if, you know, you go through the plea hearing where the judge asks if he has three predicate offenses, and the judge asks something along the lines of, you understand you have the right to challenge those offenses, and the application of the ACCA, not going so far as to say talk about the categorical approach, but that seems to me that that would be a clear waiver if he says, yes, I understand I have that right and I'm not going to challenge it. I think perhaps in isolation that's correct, Your Honor, but I think it's also important here that this isn't even just something where we have a case where Paco Centeno amounted to just statements at sentencing or Montgomery amounted to statements at sentencing. We have over several months, you know, a process of plea negotiation, a plea agreement in which this issue came up, and then it came up again during the plea hearing, and then it came up ahead of sentencing, and then it came up again at sentencing. So there was a lot of time, I think, to identify the issue, and certainly these are issues that are litigated quite frequently. There's been, you know, there's a Supreme Court case that had just been, I think, just been decided, Brown, that discussed IO flu pain, so it wasn't a mystery, and I don't think this is something in which anyone was unaware of, you know, the possible issues, and certainly it's very complicated, but I don't think that means. Where's the evidence that the defendant or his attorney was aware? Well, I mean, I think the fact that he has, he made a plea agreement in which he obtained certain benefits and made certain concessions, and the fact that at the end he said, I've carefully reviewed this entire agreement, I understand what the agreement is, I talked to my attorney about the defenses, about the sentencing provisions and the consequences on the agreement, and I think, I mean, I don't know their conversations, but. Let me ask you, if this, the assault conviction, do you think that still qualifies as a predicate offense? Your Honor, we're not relying upon the assault with intent. And my question is, do you think it still qualifies as a predicate offense? I think as it pertains to this case, it's a difficult issue because I think that offense presents difficult questions about divisibility, and there's certainly a lot of different intents to commit criminal sexual conduct under Michigan law. There's several different subsections, and we haven't relied upon it in this case because it's unnecessary. But it was relied on below, so it seems like it's possible that the parties may have, you know, not necessarily understood that that was or was not a predicate offense, at least at that time. It may not have generated, I think, much attention, Your Honor, because there were three other offenses, and that one was, could have been the gratuitous one in which there wasn't a reason to contest or put much analysis into it because you have these other three convictions. And I think at best, as it pertains to the delivery of cocaine conviction in 2018, I mean, at best, that's an extraordinarily complicated question for Mr. Jackson. And I think it's most likely an issue in which it's, once you go through the analysis, it is even under regular. Is it still a complicated question now? I mean, I think after Brown, after Wilkes, it's hard to see that that's a complicated, on the merits. No, I understand. So what I'll reinforce is that, first, we're on a plein air standard of review, so I think it's very difficult to say, especially without a case directly addressing this on point, that there was, you know, a plein air here. Wilkes, the second Wilkes opinion, and Brown both address an issue that ultimately went to the timing of when do you look, what time period do you look to compare these federal and state schedules? And I think to the extent Wilkes talks about the status of Iowa Flu Plain after 2015, it's most likely to just set up and understand the argument and what the framework we're looking at without really doing the analysis of the question because there was no reason to because he didn't have a conviction during that time period. And certainly Brown just addresses the timing issue here, which is, you know, you have to look to the time of the state conviction, and that's what was heavily disputed. Like, there was some discussion about these issues in the briefing before Wilkes, and the court didn't have any reason to consider it, and I don't think that we can read much into as kind of a description of the argument or like a premise that's being accepted just for the purpose of setting up. So can I understand your argument? So in 2018, Ibey Flame, I know I'm butchering that, was not part, Michigan, like, looked through to federal law, and because it wasn't part of federal law, it wasn't part of Michigan law? That's correct, Your Honor. So there's two separate bases to come to that conclusion. The first is that Michigan law has an exemption from the state controlled substance schedules when there is a federal exemption from the controlled substance schedules. That's one basis. The other basis, and that happened in late 2015, the other basis is that controlled substances that have no potential for abuse are also exempted from the controlled substance schedules. So there was some discussion in the reply about why isn't at least the latter? I get why the former might not be an affirmative defense. Why isn't the latter an affirmative defense, as your friend on the other side points out? Your Honor, it does appear. Let me just emphasize that there's a lot of uncertainty under the law, and I think that goes to the question of whether any error here can be plain. But I think it is true that both of those are defenses. The question, though, and I think Mr. Jackson Why would the first one be a defense? In other words, what's included in the law and not included in the law is not an affirmative defense as much as it. In other words, it can't be that if you bar just cocaine and you indict me under the law that bars just cocaine, you indict me for marijuana, that I have to raise an affirmative defense. Your Honor, it's kind of a quirk of Michigan law, and I agree with your analysis just on an abstract level. We cited the statute in our briefing. Michigan Comp Laws 333.7531 provides that the exemptions provided in the chapter are defenses of the defendant. The question, though, is what kind of defense is it? And I think this is where Mr. Jackson's citation to Smith v. United States in reply really comes in full force. If it is a defense, and part of this goes to how we talk and think about what an affirmative defense means. Sometimes courts are using it more loosely. Some take a broader view of what it means, and some don't. But ultimately the question is if it is a defense that goes to and negates an element of the offense, then I think constitutionally, going back all the way to the 60s and 70s, the Supreme Court has said that the prosecution has to maintain the ultimate burden of persuasion on that issue. So the question that comes up is, and I think what Michigan law is really doing, and you can see this from Dean, and I'm going to butcher this and say it wrong, Hartunowicz, is they're talking about the burden of production in those cases. So you get charged, the defendant, they use the words, has to present competent evidence. And I think that talks, that goes to what is a burden of production, competent evidence to try to establish these offenses. And Dean is interpreting a predecessor statute that has a similar language to the federal exemption one that was at issue here. But Dean, even as explicit, says that once competent evidence is raised, which once the defendant meets his burden of production, the prosecution still has to meet its burden of persuasion because we're talking about something that goes to the element, which is what is a controlled substance of this offense. And I think to the extent, this is also a long way of saying that to the extent that this is unclear or that it's not straightforward, I think that also counsels in favor of applying, because we're applying a plain error standard, that any error, if there was one, couldn't be plain. How do you, assume we're in the invited error world and not the waiver world, what do we do with the miscarriage of justice prong? In other words, the first prong to get to plain error. So I think, to my knowledge, and perhaps I'm mistaken, the one case that I think has been identified in which the interest of justice or manifest injustice has been shown is Montgomery. In Montgomery, the court goes out of its way, I think, several times to talk about the obviousness of the error. And there it was because on resentencing, everyone failed to adjust the defendant's criminal history category after he no longer qualified. I think maybe it was a career offender. But here, we don't have an obvious guidelines miscalculation here. We have something that I think is a complex issue. And the emphasis on the complexity of the categorical approach and why someone couldn't waive it has the flip side where it's so complex and it can't be clear or obvious for purposes of this interest of justice, manifest injustice standard. One argument. Judge Mathis asked you about sexual assault. And you said that's pretty complicated. That's why we're not defending it on appeal. But that would seem to feed into this argument you're making. So why shouldn't you be defending it in that realm? I think, Your Honor, if this was a case in which we had only two clear qualifying convictions or even ones that are likely qualifying convictions, then maybe the weighing and the analysis could potentially change if this assault with intent to commit criminal sexual conduct was what put you over the line. And I think that's where the interests come in here. The other thing that I'll just talk about interest in, I keep emphasizing this, but plea agreements at the end of the day are contracts, and parties are going into contracts with making certain concessions and gaining certain things. Mr. Jackson did that here. The government did that here. And because you have kind of this exchange where Mr. Jackson gained things because he made certain concessions and took on certain obligations and waived certain things, he also gained things. So in this context, I think it's important to recognize that he was gaining something in terms of kind of thinking about interests and manifesting justice. He gained something from signing this plea agreement. The only thing that I'd like to point out just for the courts, and I see I'm running out of time, for the court's attention, is there's been a lot of discussion, I think, about Parco Centeno. Ultimately, Parco Centeno only talked about or only relied upon my reading of its analysis were representations at sentencing. And I think there was, and Mr. Jackson does reference that there was a plea agreement in that case. But my read is that the court was careful not to rely on that because the court explained in the background section to Parco Centeno that that agreement was rescinded ahead of sentencing. I believe there was a breach because the defendant asked about a rest or departure when he shouldn't have. So effectively, I don't think that that would be something, and I think the court implicitly didn't want to rely on that because of the fact that the defendant was no longer getting to the benefit of the bargain in making a conditional waiver. And I see I'm over time. I'm happy to answer any other questions the panel has. Further? Judge Batchelder, any further questions? No, thank you. Thank you, counsel. Thank you, Your Honor. You have three minutes. Thank you, Your Honor. Just a few points. First, as to the plea agreement and waiver, many of these types of cases arise on plea agreements. You mentioned Parco Centeno, but also Cabbage. There are others as well. I mean, most cases are resolved via plea agreement. What matters is that Jackson did not know that the status of his prior crimes were in dispute and knowingly waived the right to argue about that. And I would point the court to paragraph 13 of the plea agreement, which . . . You agree, but that would be true in every armed career criminal waiver case, almost, that we've seen. I'm not saying everyone. Like, maybe you know and you relinquish it. That could be the odd case, but I'd be shocked if anyone would do it unless they're getting a 5K and there's other stuff going on. Your Honor, I don't dispute that in most cases that would be the case. That's right. I think Judge Mathis, you pointed out the judge could say something indicating, hey, you have the right to dispute this. Do you still want to forego that right? But you always have the right to dispute it. They have the right to dispute anything. The judge can't stop them from disputing something. That's fair, Your Honor. But I did want to point the court to paragraph 13 of the plea, where it says both parties reserve the right to argue for criminal history, category, score, offense level. So it's not, this wasn't an all out, you know, I'm waiving all rights to argue about what's the proper sentence. And as to the plea as a contract, the district court still has an ultimate obligation to get the law right, and so it doesn't have to accept the plea if the guideline scores are improperly calculated. For a party presentation, I mean, does it have an obligation to look? I agree with you on the guidelines, pure guidelines. But if they say these are qualifying, a district court has no independent obligation. I can't imagine there's a case out there that says the district courts are roving commission, looking, second guessing everything the parties agree to with regards to the guidelines. I think that's right, Your Honor, but it doesn't mean that the government doesn't take a risk if it incorrectly classifies somebody in putting together the plea agreement. Both sides take a risk in that. That's why both sides have an obligation below to figure these things out. And it's why both sides acknowledge that the plea is not binding necessarily as well. Moving quickly, I think I just have about 30 seconds to the second issue. It is clear that what they're arguing are affirmative defenses. They are not elements of the prosecution's case. The prosecution doesn't need to prove a negative that this particular version of cocaine or derivative of cocaine is not only cocaine, but it's also not on this federal schedule, or it is not on this federal schedule. And Michigan courts haven't just said these are defenses. The Hart-Tunowitz case says these are affirmative defenses that a defendant may present to rebut the state's evidence. And I point the court to the Cervanek opinion, the Anbach opinion, where the court looked to state law to distinguish between means and elements, and I think the same analysis would be appropriate here. For all these reasons, we ask that the court vacate Jackson's sentence and remand for resentencing under the correct guidelines range. Thank you, counsel. Thank you. I can't remember, you're CJA appointed, right? Yes. Thank you very much for your excellent representation on behalf of your client. Briefs were well done. Argument was well done. We appreciate it. Thank you, Your Honor. Come back and see us. Thank you.